## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 20-CV-62268-RAR

**AMIR PREISLER**, *individually and on behalf of all others similarly situated*,

      Plaintiff,

v.

**EASTPOINT RECOVERY GROUP, INC.,**
**UNITED HOLDINGS GROUP LLC and JOHN DOES 1-25**,

      Defendants.

_____/

### ORDER GRANTING MOTION TO DISMISS AND
### MOTION FOR JUDGMENT ON THE PLEADINGS

THIS CAUSE comes before the Court upon Defendant Eastpoint Recovery Group, Inc.'s Motion to Dismiss [ECF No. 13] and United Holdings Group, LLC's Motion for Judgment on the Pleadings [ECF No. 28] (collectively, "Motions"). Having reviewed the Motions, Plaintiff's Response to Eastpoint's Motion [ECF No. 26], Eastpoint's Reply in support of its Motion [ECF No. 27], and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that the Motions [ECF Nos. 13, 28] are **GRANTED** as set forth herein.

### BACKGROUND

Plaintiff Amir Preisler, seeking to represent a class of similarly situated Florida debtors, brought the instant action against Eastpoint, UHG, and John Does 1-25 for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq*.[1] Compl. [ECF No.

---

[1] According to the Complaint, "John Does l-25 are fictitious names of individuals and businesses alleged for the purpose of substituting names of Defendants whose identities will be disclosed in discovery and should be made parties to this action." Compl. ¶ 12.

1] ¶¶ 3-5.  Preisler is a Florida resident.  *Id.* ¶ 7.  Some time prior to November 2019, Preisler incurred a debt owed to Pentagon Federal Credit Union ("PFCU").  *Id.* ¶ 23.  Thereafter, PFCU sold the debt to Defendant UHG.  *Id.* ¶ 27.  UHG then contracted Eastpoint to collect the debt which originated with PFCU.  *Id.* ¶ 28.

On or about November 7, 2019, Eastpoint sent Preisler a collection letter ("Letter") regarding the alleged debt owed to PFCU.  *See* Letter [ECF No. 1-1].  The Letter lists statutorily required information regarding the debt, including the account number, original creditor, current creditor, and amount due.  *Id.*  Additionally, the Letter states: "The account listed above has been assigned to this agency for collection.  We are a professional collection agency attempting to collect a debt. Any information we obtain will be used as a basis to *enforce* collection of this debt." *Id.* (emphasis added).

Further, conspicuously written in the main body, the Letter states: "Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid.  If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification."  *Id.*  The Letter is signed by "Amy Hall, Account Manager."  *Id*. In the bottom center, the Letter concludes, "**THIS IS A COMMUNICATION FROM A DEBT COLLECTOR**.  **THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE**." *Id*.

On November 6, 2020, exactly one year from the date of the Letter, Preisler filed his Complaint.[2]  The Complaint alleges four counts for FDCPA violations of 15 U.S.C. §§ 1692d,

---

[2] An action to enforce any liability under the FDCPA "may be brought ... within one year from the date on which the violation occurs."  15 U.S.C. § 1692k(d).

1692e, 1692f, and 1692g.  On January 19, 2021, Eastpoint filed its Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1)—on the grounds that Plaintiff does not have standing to sue under the FDCPA—and Rule 12(b)(6)—on the grounds that Plaintiff has failed to state a claim upon which relief can be granted.  *See generally* Mot. [ECF No. 13].  On March 11, 2021, once Eastpoint's Motion was fully briefed, UHG filed a Motion for Judgment on the Pleadings [ECF No. 28] adopting and incorporating the arguments advanced in Eastpoint's Motion.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(1) requires a court to dismiss an action for lack of subject matter jurisdiction.  FED. R. CIV. P. 12(b)(1).  A court lacks subject matter jurisdiction over a claim when a plaintiff fails to bear the burden of establishing the "irreducible constitutional minimum" of standing.  *See Spokeo Inc. v. Robins*, --- U.S. ---, 136 S. Ct. 1540, 1547, 194 L.Ed.2d 635 (2016) (clarifying the contours of constitutional standing); *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (The constitutional standing doctrine is a "threshold question in every federal case, determining the power of the court to entertain the suit."); *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005) ("In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims."); *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1002 (11th Cir. 2004) ("[S]tanding must exist with respect to each claim.").

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings.  FED. R. CIV. P. 12(c).  In evaluating a motion for judgment on the pleadings, a court will accept the facts in the complaint as true and view them in the light most favorable to the nonmoving party.  *Cunningham v. Dist. Attorney's Office for Escambia County*, 592 F.3d 1237, 1255 (11th Cir. 2010).  Thus, motions for judgment on the pleadings based on a purported failure to state a claim are evaluated using the same standard as a Rule 12(b)(6) motion to dismiss.

*Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018) (citation omitted). Dismissal based on lack of standing is proper on a motion for judgment on the pleadings as long as the facts alleged in and documents attached to the pleading, viewed in the light most favorable to the plaintiff, warrant judgment in favor of the defendants. *In re Schmeglar*, 523 B.R. 119, 122 (Bankr. N.D. Ill. 2014); *see also Pinecrest Consortium, Inc. v. Mercedes-Benz USA, LLC*, No. 13-20803, 2013 WL 1786356, at *2 (S.D. Fla. Apr. 25, 2013) (granting defendant's motion for judgment on the pleadings based on lack of standing).

## ANALYSIS

Eastpoint moves to dismiss the Complaint on two grounds. First, Eastpoint argues that Preisler has no standing to bring suit because the allegations in the Complaint do not establish a concrete injury in fact sufficient to maintain Article III standing. Second, Eastpoint argues that Plaintiff has failed to state an FDCPA claim upon which relief can be granted. As a threshold jurisdictional issue, the Court must consider standing first. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998). As explained below, the Court finds that Plaintiff lacks standing. Therefore, the Court need not reach the merits of Eastpoint's alternative bases for dismissal, as those grounds are rendered moot by Plaintiff's lack of standing. *Gardner v. Mutz*, 962 F.3d 1329, 1338-40 (11th Cir. 2020).

### A. Article III Standing

Under Article III of the United States Constitution, federal courts have subject matter jurisdiction only over "Cases" or "Controversies." U.S. Const. art. III, § 2. The case-or-controversy requirement is satisfied only where a plaintiff has standing. *See, e.g., DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342-43 (2006); *Bloomgarden v. Allstate Fire & Cas. Ins. Co*., No. 19-62879, 2020 WL 6375169, at *1 (S.D. Fla. Oct. 30, 2020). Standing implicates "the power of the court to entertain the suit." *Warth*, 422 U.S. at 498. Accordingly, a

plaintiff must establish standing before a court can consider the merits of a given claim. *TSG Water Res., Inc. v. D'Alba & Donovan Certified Pub. Accountants, P.C.*, 260 F. App'x 191, 195 (11th Cir. 2007) (citing *Steel Co.*, 532 U.S. at 94) (noting that subject matter jurisdiction is a threshold concern).

Moreover, a plaintiff must establish standing as to each claim he or she asserts.[3] *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008). To establish standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547.

**B. Preisler Lacks Article III Standing**

In this case, Eastpoint only challenges the first requirement—it argues that Preisler has not alleged an injury-in-fact sufficient to confer standing. The Court agrees and finds that Preisler also fails to sufficiently allege traceability. The Court addresses each issue in turn.

1. No Injury in Fact

A plaintiff has suffered an injury in fact if he has "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "Each subsidiary element of injury—a legally protected interest, concreteness, particularization, and imminence—must be satisfied." *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996-97 (11th Cir. 2020) (citing *Spokeo*, 136 S. Ct. at 1545; *Lujan*, 504 U.S. at 560). "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue

---

[3]  As noted above, Preisler's Complaint asserts four counts for violations of 15 U.S.C. §§ 1692d, 1692e, 1692f, and 1692g. Eastpoint's Motion attacks Preisler's standing with respect to all four claims. However, in his Response, Preisler advances standing arguments mainly in support of his "overshadowing claim" pursuant to § 1692g. Therefore, the following discussion will analyze standing generally with respect to all four claims but may at times focus specifically on Preisler's § 1692g overshadowing claim—which appears to be the crux of his action.

to a plaintiff who would not otherwise have standing." *Spokeo*, 136 S. Ct. at 1547-48.  Thus, a plaintiff cannot establish standing merely by alleging "a bare procedural violation, divorced from any concrete harm," *id*. at 1549, and allegations of FDCPA violations, without more, are insufficient to establish standing.  *See Hill v. Resurgent Capital Servs., L.P.*, No. 20-20563, 2020 WL 4429254, at *4 (S.D. Fla. July 31, 2020) ("But mere violation, without a showing of a concrete and particularized injury, is insufficient to convey standing.").

At issue here is whether Preisler's alleged injury is concrete.  *See* Mot. 4-8.  Generally, a tangible injury qualifies as concrete.  *Trichell*, 964 F.3d at 997 (citing *Spokeo*, 136 S. Ct. at 1549). However, the Complaint does not allege Preisler has suffered any tangible injury as a result of receiving the Letter.  For instance, Preisler does not allege that he made any payments in response to the Letter.  Instead, the essence of Preisler's injury, according to the Complaint, is that he was caused "distress and anxiety" because the inclusion of the word "enforce" in the Letter made the document "threatening and confusing" to him.  Compl. ¶ 38; *see* Letter [ECF No. 1-1].

"Intangible injuries sometimes qualify as concrete, but not always."  *Trichell*, 964 F.3d at 997.  The Eleventh Circuit recently examined intangible injuries and standing in the context of the FDCPA in *Trichell*.  That case involved two plaintiffs who sued a debt collector under the FDCPA based on allegations that correspondence they received was misleading—even though they were not actually misled.  In addressing standing, the Eleventh Circuit analyzed whether the plaintiffs' intangible injuries were sufficiently concrete by considering "history and the judgment of Congress."  *Id*. at 997.

Turning to history first, the *Trichell* Court questioned whether the alleged intangible injuries bore "a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts."  *Id*. (internal quotations omitted).  The Eleventh Circuit noted that the "closest historical comparison" to FDCPA claims are "causes of action for

fraudulent or negligent misrepresentation." *Id.* at 998.  However, as explained by the Eleventh

Circuit, both of those causes of action would require a plaintiff to "show harm cause[d] to [him]

by [his] justifiable reliance upon the false information." *Id.* (internal quotations omitted).  Stated

differently, "there can be no recovery if the plaintiff is none the worse off for the misrepresentation,

however flagrant it may have been." *Id.* (citations omitted).  Thus, based on the Court's historical

analog analysis, plaintiffs could not satisfy the concreteness requirement by seeking to recover for

allegedly misleading representations without alleging reliance or actual damages.

Next, the Eleventh Circuit considered the judgment of Congress.  In doing so, it relied on

the FDCPA's statutory findings which "contain one sentence identifying the harms against which

the statute is directed: 'Abusive debt collection practices contribute to [a] number of personal

bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.'"[4]

*Id.* at 999 (quoting 15 U.S.C. § 1692(a)).  The Court also noted the FDCPA's private cause of

action further evidences that Congress intended to target concrete injuries and not merely statutory

violations.  As the Eleventh Circuit explained:

> [The FDCPA] provides that a person may recover "any actual
> damage sustained by such person as a result of" an FDCPA violation
> and "such additional damages as the court may allow." 15 U.S.C. §
> 1692k(a).  This formulation suggests that Congress viewed statutory
> damages not as an independent font of standing for plaintiffs without
> traditional injuries, but as an "additional" remedy for plaintiffs
> suffering "actual damage" caused by a statutory violation.

---

[4] Other circuit courts have provided similar guidance with respect to congressional judgment involving the
FDCPA.  For instance, the Sixth Circuit has noted the types of misrepresentations that are sufficient in and
of themselves to create a concrete injury under the FDCPA are restricted to the core misrepresentations that
Congress intended to prevent when it enacted the FDCPA, namely: (i) misrepresentations as to whether the
plaintiff owed the debt, such as misstatements regarding the identity of the debtor, the amount of debt owed,
or the validity of the debt; (ii) misrepresentations that could cause the plaintiff to waive his procedural rights
under the FDCPA; and (iii) threats of arrest or criminal prosecution if the plaintiff fails to pay the debt.
*Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 870 (6th Cir. 2020).

*Id.* at 1000.   In the end, the *Trichell* Court found congressional judgment also undermined plaintiffs' purported standing because the "serious harms" the FDCPA is intended to target "are a far cry from whatever injury one may suffer from receiving in the mail a misleading communication that fails to mislead." *Id.* at 999.

The Eleventh Circuit's decision in *Cooper v. Atl. Credit & Fin. Inc.*, 822 F. App'x 951, 954 (11th Cir. 2020) is also instructive here.   In *Cooper*, the Eleventh Circuit found that confusion—on its own—is not an injury in fact.  *Id.* at 955.  In that case, the plaintiff alleged that a debtor violated the FDCPA when it sent a second collection letter that improperly "overshadowed" or "contradicted" the statutorily required validation notice contained in the first collection letter.  *Id.* at 952.  As a result of the "conflicting collection demands," the plaintiff alleged she was left confused about "her statutory rights to dispute the debt and seek validation, as well as whether she had the full 30 days to dispute the debt and demand validation."  *Id.* at 953. The Eleventh Circuit noted that the plaintiff did "not allege that her confusion about her statutory rights resulted in her not disputing the debt, that her confusion would have resulted in her utilizing one of the payment options in the second letter despite the debt being invalid, that her confusion would have resurrected any previously invalid debt, or that the confusion would have resulted in any other negative consequences."  *Id.* at 955.  Therefore, because the plaintiff did not allege "she was affected in any meaningful way by the letter," she did not establish "any particularized injury" and lacked standing.  *Id.*

Here, Preisler's claims are based on facts comparable to those in *Trichell* and compel the same result—that is, Preisler lacks standing because his subjective interpretation of the word "enforce" did not result in a concrete and particularized injury necessary to confer Article III standing.  As Eastpoint notes in its Motion, this is the typical "lawyer's case" in which Plaintiff's claims were inspired—coincidently the day before the statute of limitations would expire—by an

enterprising plaintiff's attorney as opposed to a consumer's efforts to remedy an actual harm suffered.  Mot. at 1-2.  Preisler alleges that he was harmed because the Letter's "language"—meaning the word "enforce"—allegedly "overshadows the 'G-Notice' by scaring Plaintiff into making a payment immediately to avoid the means of enforcement threatened by Defendant instead of exercising his statutory right to dispute the debt."  Compl. ¶ 37.

But even if the word "enforce" in the Letter were truly misleading, this is light years away from the types of misrepresentations that are sufficient in and of themselves to create an injury in fact according to the FDCPA's statutory findings.  Indeed, Preisler does not dispute the amount of the debt, the validity of the debt, or that he owes the debt.  Further, despite the purported "fear" produced by the word "enforce," Preisler does not allege to have made a payment or have waived his right to dispute the debt.  Thus, like the consumers in *Trichell*, Preisler generally alleges that the Letter is misleading without claiming that he was misled.

In response to the Motion, Preisler attempts to distinguish the instant action from *Trichell*. Specifically, he reframes his injuries as: (1) a risk of harm due to further enforcement measures and (2) damages in the form of emotional distress and retaining an attorney.  Resp. at 5.  At the outset, Preisler's newfound "risk of harm" theory is an improper attempt to reframe and broaden the allegations in his Complaint.  *Tsavaris v. Pfizer, Inc*., No. 15-21826, 2016 WL 375008, at *3 (S.D. Fla. Feb. 1, 2016) ("A plaintiff, though, cannot amend the complaint in a response to a motion to dismiss, for a court's review on dismissal is limited to the four corners of the complaint.") (citation omitted).  And even if it had been pleaded, Preisler's risk of harm theory is implausible. Preisler claims that the "risk of harm of further enforcement measures is immediately apparent by the terms of the Letter, and this is a risk that cannot be dissipated because the threat of enforcement is ongoing which cannot be mitigated."  Resp. at 5.  However, the Complaint's allegations reflect that this alleged risk was dissipated by the time he initiated this action *one year* after receiving the

Letter because "any risk allegedly created by the term 'enforce' as a mechanism to scare, intimidate or confuse Plaintiff into making a payment instead of disputing the debt dissipated once the thirty days window to dispute the debt elapsed." Rep. at 3. In other words, if the Letter was misleading, Preisler knew that before he filed the Complaint—at which point any risk of harm associated with the language in the Letter had already dissipated. *Trichell*, 964 F.3d at 1003 ("Courts must assess Article III standing as of when the complaint is filed.").

With respect to Plaintiff's position that he suffered actual damages by virtue of his emotional distress, such claims are insufficient to confer standing even with respect to an overshadowing claim brought pursuant to section 1692g. *Gause v. Med. Bus. Consultants, Inc.*, 424 F. Supp. 3d 1175, 1200-01 (M.D. Fla. 2019) (stating that a plaintiff asserting an overshadowing violation pursuant to "section 1692g(b) cannot simply assert a bare violation of the statute to invoke the jurisdiction of a federal court; rather, he must 'clearly allege' he suffered some harm or appreciable risk of harm from the violation"). Preisler's receipt of the allegedly misleading Letter without a claim of concrete "downstream consequences" from said receipt is simply insufficient to confer standing here. *Trichell*, 964 F.3d at 1004. And he cannot rely solely on his feelings of distress, confusion, or anxiety to fabricate concrete injury. [5] Such conjectural harms "cannot satisfy Article III." *Id.*; *see also Cooper*, 822 F. App'x at 954 (holding that confusion over a collection letter, without more, is "insufficient to confer standing").

---

[5] Preisler also maintains his claims should survive because he suffered damages in the form of having to "retain an attorney." *See generally* Resp. In essence, Preisler would have this Court find that every plaintiff represented by an attorney can secure standing with respect to his or her FDCPA claims based on the mere fact that he or she retained an attorney. And, following Preisler's logic, then every court that has ever dismissed a represented plaintiff for lack of standing in an FDCPA lawsuit would be wrong. That position is untenable. In any event, the hiring of counsel, by itself, does not constitute an injury, although the payment of fees to an attorney *may* satisfy this requirement. *Walter v. Palisades Collection, LLC*, 480 F. Supp. 2d 797, 804 (E.D. Pa. 2007) (finding payment of legal fees may constitute an actionable injury under RICO). Notably, Preisler has not alleged that he has paid—or is even obliged to pay—any fees to his attorney.

In sum, Preisler's attempt to bring claims for technical violations of the FDCPA fails. Mere violations, without a showing of a concrete and particularized injury, are insufficient to convey standing. The FDCPA is intended to function as "a shield to protect debtors from unethical and illegal debt collectors; it is not a sword to be wielded to force defendants to pay plaintiffs who have not suffered." *Daniels v. Aldridge Pite Haan, LLP*, No. 20-00089, 2020 WL 3866649, at *4 (M.D. Ga. July 8, 2020) (dismissing complaint for lack of standing because plaintiff's "amorphous and generic claims of harm are precisely the kind of 'bare allegation of a statutory violation' that fail to meet the concreteness requirement of injury in fact.") (citations and quotations omitted). Ultimately, the Eleventh Circuit does not recognize an "anything-hurts-so-long-as-Congress-says-it-hurts theory of Article III injury," and thus Preisler's Complaint is due to be dismissed without prejudice for lack of standing. *Trichell*, 964 F.3d at 999, n.2 (quoting *Hagy v. Demers & Adams*, 882 F.3d 616, 622 (6th Cir. 2018)).

### 2.   No Traceability

Even if Preisler suffered a concrete injury, he faces a separate standing problem because any such injury is not traceable to the alleged FDCPA violations. *See Buchholz*, 946 F.3d at 867-68. Article III demands an injury that is "fairly traceable to the challenged conduct of the defendant." *Spokeo*, 136 S. Ct. at 1547. Traceability requires a "causal connection between the injury and the conduct complained of." *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003). A traceability showing need not rise to the level of proximate causation; even an indirect injury can satisfy the requirement. *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1271 (11th Cir. 2019). However, the injury must result from the conduct of defendant—and not "some third party." *Lujan*, 504 U.S. at 560 (citation omitted). The main inquiry is whether "the line of causation between the illegal conduct and injury [is] too attenuated"

to establish traceability. *Allen v. Wright*, 468 U.S. 737, 752 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118 (2014).

Here, the specific traceability question is whether Preisler's claimed injury is causally related to the alleged FDCPA violations.  The Middle District of Florida recently dismissed a strikingly similar case based, in part, on traceability.  *Crowder v. Andreu, Palma, Lavin & Solis, PLLC*, No. 19-00820, 2021 WL 1338767, at *7 (M.D. Fla. Apr. 9, 2021).  In *Crowder*, a law firm sent a debtor a single letter much like the one at issue here.  *Id.* at *1.  It was a formulaic debt validation letter; it did not threaten suit or even mention further legal action.  *Id.*  Still, the debtor filed suit—claiming she suffered "emotional distress" after receiving the letter.  *Id.*

The *Crowder* Court found that the debtor lacked standing because any fear or anxiety she felt was of her own doing.  *Id.* at *7.  In other words, it was the plaintiff's worry about the consequences of not paying her debt—rather than the letter—that caused the distress.  The same is true in this case.  Any fear Preisler experienced did not result from the mention of the single word "enforce" in the Letter.  Instead, it was Preisler's own default on his $10,801.85 debt and concern over the consequences of such default that caused his distress.  Because Preisler fails to allege any injury traceable to an FDCPA violation—he lacks standing.

## CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

(1)  Defendant Eastpoint Recovery Group, Inc.'s Motion to Dismiss [ECF No. 13] is **GRANTED**.

(2)  Defendant United Holdings Group, LLC's Motion for Judgment on the Pleadings [ECF No. 28] is **GRANTED**.[6]

---

[6]  Because the Court grants Eastpoint's Motion based on lack of standing, Preisler's claims against UHG fail as a matter of law.

(3)  This case is **DISMISSED *without prejudice*** for lack of subject-matter jurisdiction.[7]

(4)  The Clerk is directed to terminate all pending motions and deadlines, and thereafter **CLOSE** the case.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 25th day of May, 2021.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

---

[7]  "Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)."  *Cone Corp. v. Fla. Dep't of Transp*., 921 F.2d 1190, 1203 n.42 (11th Cir. 1991).  A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice.  *Crotwell v. Hockman-Lewis Ltd*., 734 F.2d 767, 769 (11th Cir. 1984).  The Court acknowledges that a dismissal without prejudice when the statute of limitations has run is tantamount to a dismissal with prejudice.  *See Stein v. Reynolds Sec., Inc*., 667 F.2d 33, 33-34 (11th Cir. 1982) (holding that dismissal of action "without prejudice does not authorize a subsequent suit brought outside of the otherwise binding period of limitations").  Based on the allegations in the Complaint, it appears that the statute of limitations on Preisler's claim has run.  However, because "the statute of limitations on an FDCPA claim based on a written communication begins to run the date the communication is mailed," and it is unknown whether Preisler received any other potentially actionable communications—the Court cannot find Preisler's claim is conclusively time-barred on the face of the record.  *Owens-Benniefield v. BSI Fin. Servs*., 806 F. App'x 853, 857 (11th Cir. 2020) (citation omitted).